```
1  John Houston Scott, SBN 72578
   W. Gordon Kaupp, SBN 226141
2  SCOTT LAW FIRM
   1388 Sutter Street, Suite 715
3  San Francisco, CA 94109
   Tel: (415) 561-9601
4  Fax: (415) 561-9609
   john@scottlawfirm.net
5  gordon@scottlawfirm.net

6  Attorneys for Plaintiff
```

**FILED**
2012 OCT 11 A 11: 29
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRBY MARTENSEN, | Case No. 12 5257 JSC |
| Plaintiff, | |
| vs. | COMPLAINT FOR DAMAGES |
| WILLIAM KOCH and DOES 1-25, inclusive, | |
| Defendants. | |

Plaintiff, KIRBY MARTENSEN, alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1332. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1332 because the plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000. Jurisdiction under 28 U.S.C. § 1331 is conferred on this Court because the action arises under 42 U.S.C. § 1983 and alleges violation of the Constitution.

2. Venue in the Northern District of California is proper because part of the conduct at issue in this action occurred in Northern California.

ORIGINAL

## PARTIES

3. Plaintiff KIRBY MARTENSEN (hereafter "Martensen" or "Plaintiff") resides in Berkeley, California.

4. Plaintiff has information and believes Defendant WILLIAM KOCH is a resident of the Florida.

5. Plaintiff is ignorant of the true names and capacities, whether individual, corporate or otherwise of DOES 1 through 25 herein, and prays leave of Court to insert the true names and capacities of such Defendants when they become known or ascertained together with appropriate charging allegations.

6. Plaintiff is informed and believes and thereupon alleges that at all times relevant to this litigation, defendants and each of them, acted in concert and/or conspired to cause the harm and damages alleged herein.

## STATEMENT OF FACTS

7. Prior to and until March 22, 2012, Plaintiff Kirby Martensen was an executive employee of companies owned and/or controlled by William Koch including Oxbow Carbon & Minerals, Inc. ("OCM"), Oxbow Carbon & Minerals International ("OCM International"), or one of their affiliated companies. Martensen held various managerial and/or executive positions with OCM.

8. Each year, through its subsidiaries and affiliates, Oxbow Carbon supplies millions of metric tons of petroleum coke and steam coal by vessel, rail, barge and truck to customers throughout the United States and countries located throughout the world. Oxbow Carbon is the largest distributor of petroleum coke in the world, with annual shipments of nearly 11 million metric tons. Oxbow Carbon exports petroleum coke worldwide into the European, Latin American and Pacific Rim markets. Oxbow Carbon, through OCM and OCM International, sells significant amounts of "pet" coke and coal throughout Asia, shipping millions of metric tons of product to that region each year.

9. In late 2011, Defendant Martensen was promoted to the position of Senior Vice

President-Asia with OCM International, and relocated to OCM International's Singapore office. OCM agreed to give plaintiff a 40% salary increase, provide him with two leased vehicles, and pay his household expenses including rent, utilities, appliances and house cleaning if he and his family relocated. OCM also agreed to fully cover the cost of his children's education.

10. Martensen understood that the goal of this assignment was to help legitimize OCM's Bahamian shell company. This included, but was not limited to, discussions and negotiations concerning the sourcing of pet-coke and sales to Asian customers. Plaintiff was informed that the move to Asia was for tax purposes. More than 75% of Oxbow's fuel-grade petroleum coke export profits were derived from its Asian trading business. Plaintiff has information and believes this relocation was part of a plan being implemented to evade paying taxes to the United States on profits in excess of $200,000,000 per year.

11. In 2011, William Koch was notified of an anonymous letter alleging that Martensen and another employee Larry Black had been engaging in theft, breaches of fiduciary duty, fraud, and self-dealing against the Oxbow companies. Based on this information William Koch directed a lengthy comprehensive forensic review of thousands of documents, including the written corporate communications files (letters, memoranda, electronic corporate communications, etc.) of several employees, including Martensen.

12. Based on this surreptitious review of Plaintiff's emails and voice communications Koch learned that Martensen and others expressed concern of the legality of what they were doing on behalf of Oxbow and their distrust of upper management. As a result, William Koch promoted and implemented a plan to intimidate and discredit Plaintiff for the purpose of chilling his speech and damaging his credibility.

13. In early 2012 Martensen and other executive employees of OCM International (Larry Black, Charlie Zhan, Joe Lombardi, Rich Ansley and Bruce Taverner) were directed to attend a meeting with William Koch and others at William Koch's property known as Bear Ranch located near Aspen, Colorado. Bear Ranch is accessible only through a private road owned and maintained by Mr. Koch. The meeting was scheduled for March 21 and March 22, 2012. Martensen was directed to attend the meeting under false pretenses.

14. On the morning of March 21, 2012, Martensen flew directly from San Francisco to Aspen, Colorado. He arrived just before noon and was met at the airport by William Koch. After lunch in Aspen, Martensen, Koch and others drove to Bear Ranch to have dinner and spend the night.

15. There was no cell reception or WI-FI connection at the ranch. Martensen had no way to communicate with the outside world.

16. Martensen and other guests had breakfast at the ranch the next morning followed by a business meeting. Martensen and others were then invited by Mr. Koch to tour his Western town nearby – a collection of approximately 50 buildings designed to appear like an authentic late 19th century western town. This was followed by a helicopter tour of the ranch and a lunch hosted by Mr. Koch in one of the town meeting rooms.

17. Following lunch Martensen and others were told by Mr. Koch that they would be interviewed by a compensation specialist as part of a 360 degree peer review. Martensen was then escorted to a small room and interviewed by two agents of Koch. The interview turned into an interrogation that lasted several hours. Martensen was accused of participating in a wide-ranging scheme to defraud Oxbow and Koch of millions of dollars, accepting bribes from competitors and "diverting freight to a known competitor."

18. Following the interrogation Martensen was escorted to a SUV and directed to sit in back. It was now approximately 5:00 p.m. Just outside of town the vehicle stopped, windows were rolled down, and Martensen was served with his termination papers and a lawsuit. As the vehicle returned to the ranch, Martensen asked where he was being taken. He was told by the driver that he would be taken to Aspen. Martensen then was driven to the main house on the ranch to collect his belongings.

19. When collecting his belongings an agent of William Koch searched his suitcase and toiletries. Martensen then was escorted to a SUV and driven to a nearby cabin on the ranch. The driver then ordered Martensen to get out of the vehicle and escorted him to a cabin. While escorting Martensen the driver told Martensen, "A sheriff is here to make sure you don't wander off." Martensen observed a marked police vehicle parked nearby with a man in uniform behind

the wheel. The police vehicle was clearly visible from the window of the room in which Martensen was imprisoned.

20. After three hours of captivity Martensen was told to collect his things and that he would be taken to an airport. Martensen was directed to get in a SUV with a former co-worker, Charlie Zahn, and two agents of William Koch (driver and escort). Martensen asked to be driven to Aspen because he had a scheduled flight from Aspen to San Francisco the next morning. This request was denied. Martensen was told that he was being taken to Denver. Martensen then was kidnapped and kept captive in the vehicle during the trip to Denver.

21. Martensen was driven to a small airport in the Denver area and escorted to a private plane. It was now approximately 2:00 a.m. on March 23, 2012. Martensen and Zahn were ordered to get into the plane. The private jet was manned by a pilot, co-pilot and escort Martensen believed was armed. The plane landed in Oakland, California at approximately 4:00 a.m. On arrival Martensen was told that a car was waiting to take him to a nearby Marriot Courtyard Hotel. Martensen refused the request and asked an airport employee to call a cab. A cab arrived and Martensen left.

### DAMAGES

22. As a result of the acts and omissions alleged herein plaintiff Kirby Martensen has suffered, and continues to suffer, general damages including fear, anxiety, humiliation and emotional distress in an amount above $75,000 to be determined according to proof.

23. The acts and/or omissions of Defendant WILLIAM KOCH were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of plaintiff. Plaintiff therefore prays for an award of punitive and exemplary damages in an amount above $75,000 to be determined according to proof.

### FIRST CAUSE OF ACTION
### (False Imprisonment)

24. Plaintiff hereby re-alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

25. Defendant William Koch and his agents (1) directly or indirectly restricted plaintiff's freedom of movement for an appreciable period of time without his consent or other

5

lawful privilege; (2) did so intentionally; and (3) plaintiff was aware that his freedom of movement had been restricted.

WHEREFORE, Plaintiff prays for relief as set forth herein.

### SECOND CAUSE OF ACTION
### (Civil Conspiracy)

26. Plaintiff hereby re-alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

27. Defendant William Koch and his agents agreed, by words or conduct, to falsely imprison plaintiff; they did subject plaintiff to false imprisonment; the plaintiff was deprived of his freedom of movement and placed in fear; and plaintiff's harm was caused by defendant and his agents' acts.

WHEREFORE, plaintiff prays for relief as set forth herein.

### THIRD CAUSE OF ACTION
### (42 U.S.C. § 1983 – Conspiracy)

28. Plaintiff hereby re-alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

29. William Koch conspired with other persons, including local law enforcement officers acting under color of state law, to accomplish a violation of the plaintiff's constitutional rights by intentionally restricting plaintiff's freedom of movement. There was no probable cause that a crime had been committed for which Defendant William Koch or a law enforcement official could arrest plaintiff.

WHEREFORE, plaintiff prays for relief as set forth herein.

### JURY DEMAND

30. Plaintiff hereby demands a jury trial.

### PRAYER FOR RELIEF

The Plaintiff prays for relief as follows:

1. For compensatory damages above $75,000 according to proof;
2. For punitive and exemplary damages above $75,000 according to proof;
3. For an award of attorney's fees and costs as permitted by law; and

4. For such other and further relief as the Court may deem necessary and appropriate.

DATED: October 11, 2012                       **SCOTT LAW FIRM**

By: /s/ John Houston Scott
       JOHN HOUSTON SCOTT
       Attorney for Plaintiff

COMPLAINT