1  IRELL & MANELLA LLP
   John C. Hueston (164921) (jhueston@irell.com)
2  Melissa R. McCormick (180384) (mmccormick@irell.com)
   Cathy T. Moses (254791) (cmoses@irell.com)
3  840 Newport Center Drive, Suite 400
   Newport Beach, California 92660-6324
4  Telephone:   (949) 760-0991
   Facsimile:    (949) 760-5200
5
   Attorneys for Defendant
6  WILLIAM KOCH

7

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11  KIRBY MARTENSEN,                    )   Case No. C 12-05257 JSC
                                        )
12              Plaintiff,              )   DECLARATION OF JAY B. SHAPIRO IN
                                        )   SUPPORT OF DEFENDANT WILLIAM
13                                      )   KOCH'S MOTIONS (1) TO DISMISS
                                        )   COMPLAINT (A) UNDER FEDERAL
14      v.                              )   RULE OF CIVIL PROCEDURE 12(B)(2)
                                        )   FOR LACK OF PERSONAL
15                                      )   JURISDICTION; (B) UNDER RULE
    WILLIAM KOCH and DOES 1-25, inclusive, )   12(B)(3) FOR IMPROPER VENUE, OR IN
16                                      )   THE ALTERNATIVE, TO TRANSFER;
                                        )   AND (C) UNDER RULE 12(B)(6) FOR
17              Defendant.              )   FAILURE TO STATE A CLAIM; AND (2)
                                        )   TO STRIKE PUNITIVE DAMAGES
18                                      )   ALLEGATIONS UNDER FEDERAL
                                        )   RULE OF CIVIL PROCEDURE 12(F)
19                                      )
    _____ )   Date:   February 28, 2013
20                                          Time:   9:00 a.m. PST
                                            Ctrm:   Courtroom F, 15th Floor
21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2746187

Declaration of Jay B. Shapiro in Support of Motion to
Dismiss or Transfer (Case No. C 12-05257 JSC)

1 **DECLARATION OF JAY B. SHAPIRO**

2     I, Jay B. Shapiro, declare as follows:

3     1.    I make this declaration in support of Defendant William Koch's Motion to Dismiss

4 Plaintiff's Complaint (i) under Federal Rule of Civil Procedure 12(b)(2) for lack of personal

5 jurisdiction, (ii) under Rule 12(b)(3) for improper venue, or in the alternative, to transfer, and (iii)

6 under Rule 12(b)(6) for failure to state a claim, and Motion to Strike Plaintiff's punitive damages

7 allegations under Federal Rule of Civil Procedure 12(f). This Declaration is made of my personal

8 knowledge and, if called as a witness, I could and would testify competently to such facts under

9 oath.

10     2.    I am counsel of record for Plaintiffs Oxbow Carbon, LLC, Oxbow Carbon &

11 Minerals, LLC, and Oxbow Carbon & Minerals International, GmbH (the "Oxbow entities"), in

12 the lawsuit filed against Kirby Martensen ("Martensen"), Lawrence Black, and Zhan Wenming

13 a/k/a Charlie Zhan in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County,

14 Florida. Attached hereto as Exhibit A is a true and correct copy of the Complaint the Oxbow

15 entities filed on March 22, 2012 (the "Florida Action").

16     3.    Martensen has made false imprisonment allegations a key issue in the Florida

17 Action. Attached hereto as Exhibit B is a true and correct copy of Martensen's Amended Answers

18 to Oxbow's First Set of Interrogatories, which Martensen served in the Florida Action, in which

19 Martensen asserts false imprisonment as part of an unclean hands defense.

20     4.    Martensen is represented by Florida counsel (Lewis Brisbois Bisgaard & Smith

21 LLP, in Fort Lauderdale, Florida) in the Florida Action.

22     5.    Significant progress has been made in the Florida Action, including discovery and

23 deposition testimony regarding Martensen's alleged false imprisonment. For example, on January

24 9, 2013, I took the deposition of one of Martensen's co-defendants in the Florida Action, Charlie

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2746187

- 1 -

Declaration of Jay B. Shapiro in Support of Motion to
Dismiss or Transfer (Case No. C 12-05257 JSC)

1 Zhan.  During that deposition, Zhan testified regarding, among other things, Martensen's

2 allegations that he was falsely imprisoned in Colorado in March of 2012.

3      6.      On August 2, 2012, the Court in the Florida Action denied a motion that Martensen

4 had filed to dismiss that action for lack of personal jurisdiction and improper venue.

5      Executed on January 16, 2013, at TORONTO , CANADA

6      I declare under penalty of perjury under the laws of the United States of America that the

7 foregoing is true and correct.

8

9      Jay B. Shapiro

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership including
Professional Corporations

2746187

Declaration of Jay B. Shapiro in Support of Motion to
Dismiss or Transfer (Case No. C 12-05257 JSC)

# EXHIBIT A

IN THE CIRCUIT COURT OF THE
15TH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO.

OXBOW CARBON, LLC,
OXBOW CARBON & MINERALS, LLC,
and OXBOW CARBON & MINERALS,
INTERNATIONAL GmbH,

       Plaintiffs,

vs.

KIRBY MARTENSEN, an individual; LAWRENCE
BLACK, an individual; and ZHAN WENMING
a/k/a CHARLIE ZHAN, an individual,

       Defendants.

_____/

**SO 2012 CA 005386 XXXX MB**

COPY
RECEIVED FOR FILING
MAR 2 2 2012
SHARON R. BOCK
CLERK & COMPTROLLER
CIRCUIT CIVIL DIVISION

AD

## COMPLAINT

    Plaintiffs Oxbow Carbon, LLC ("Oxbow Carbon"), Oxbow Carbon & Minerals, LLC,

("OCM"), and Oxbow Carbon & Minerals, International GmbH ("OCM International")

(collectively, "Plaintiffs") hereby sue defendants Kirby Martensen, Lawrence Black, and Zhan

Wenming a/k/a Charlie Zhan (collectively "Defendants"), and allege as follows:

## PRELIMINARY STATEMENT

    1.    At all relevant time periods, Defendants Martensen, Black, and Zhan were

executive employees of one or more of Plaintiffs Oxbow Carbon, OCM, OCM International, or

one of their affiliated companies. Beginning in or before March 2009 and continuing to the

present, Defendants Martensen, Black, and Zhan have participated in a wide-ranging scheme to

systematically misappropriate revenues and business opportunities from Plaintiffs, and have

utilized their positions as executives of those companies to illegally enrich themselves at great expense and injury to Plaintiffs.

2.     As detailed herein, Defendants Martensen, Black, and Zhan have engaged in a pattern and practice of illegal activity, and have committed numerous breaches of their duties as executive employees, including:

(a)     Accepting illegal bribes, kick-backs, and other payments from Plaintiffs' competitors and from other third parties;

(b)     Participating in the illegal diversion of products and services to companies in competition with Plaintiffs, and secretly sharing in the payments, revenues, and profits derived by Plaintiffs' competitors from the sale of those products to third party customers – sales revenue and profits that should have inured to the benefit of Plaintiffs but for Defendants' violations of law and breaches of duty;

(c)     Conspiring with each other and others to divert related transportation business to a known competitor of one of Plaintiffs' affiliated companies, in direct contravention of explicit instructions from Defendants' superiors, and illegally participating in the wrongful imposition and misappropriation of illicit overcharges imposed by that competitor upon Plaintiffs' legitimate customers;

(d)     Utilizing Plaintiffs' assets, equipment, and facilities to promote the business of Plaintiffs' competitors;

(e)     Submitting and obtaining tens of thousands of dollars of expense reimbursements, including for overseas school tuitions, while simultaneously and illicitly obtaining reimbursement of those very same expenses from Plaintiffs' competitors with whom Defendants were conspiring to injure Plaintiffs; and

(f)     Using their status and access to information as employee executives of Plaintiffs to obtain confidential and propriety information in order to promote the business interests of competitors and for their own self-enrichment at the expense of Plaintiffs.

3.     Defendants' widespread, coordinated, and ongoing misconduct not only violates their duties as employees to their employer but also constitutes breach of fiduciary duty, breach

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Suite 2200 ▪ Miami, FL 33130 ▪ 305-789-3200

of duty of loyalty and care, unjust enrichment, usurpation of corporate opportunities, deceptive and unfair trade practices, and conversion, all as fully alleged herein.

4.     Defendants' illegal scheme has caused great injury to Plaintiffs. This injury includes substantial out of pocket losses and even more substantial lost business opportunities, in the millions of dollars, and irreparable injury to the relationships and goodwill Plaintiffs enjoy with their legitimate customers. Plaintiffs bring this action to redress those injuries and to enjoin the continuing illegal behavior of the Defendants.

## PARTIES

5.     Plaintiff Oxbow Carbon is a Delaware limited liability company with its principal place of business in West Palm Beach, Florida.

6.     Plaintiff OCM is a Delaware limited liability company with its principal place of business in West Palm Beach, Florida.  OCM is a wholly-owned subsidiary of Oxbow Carbon.

7.     Plaintiff OCM International is a limited liability company with its principal place of business in Fribourg, Switzerland. OCM International is an indirect, wholly-owned subsidiary of Oxbow Carbon.

8.     Defendant Kirby Martensen ("Defendant Martensen") was at all material times an executive officer of OCM, OCM International, or one of their affiliated companies.  Defendant Martensen was employed by Oxbow Carbon & Minerals, Inc., from 1996 through late 2003, after which time he became an employee of OCM.  Defendant Martensen held various managerial and/or executive positions with OCM, including the position of Vice President, based in OCM's Pleasant Hill, California, office.  In late 2011, Defendant Martensen was promoted to the position of Senior Vice President-Asia with OCM International, and relocated to OCM International's Singapore office.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Suite 2200 ▪ Miami, FL 33130 ▪ 305-789-3200

9.      Defendant Lawrence Black ("Defendant Black") was at all material times a Member of Oxbow Carbon and an executive officer of Oxbow Carbon and of OCM. Since 1984, Defendant Black held a variety of sales and managerial positions with Oxbow Carbon, OCM, or its affiliated companies, and held the title of Executive Vice President of Worldwide Fuel Grade Petcoke with OCM. Since March of 2009, Defendant Black has also been a Member and Executive Vice President of Oxbow Carbon. Defendant Black was based in OCM's Pleasant Hill, California, office.

10.      Defendant Zhan Wenming a/k/a Charlie Zhan ("Defendant Zhan") was, from November of 2008 through the first quarter of 2011, the General Manager of the Tianjin, China, office of Oxbow Coal, B.V., a Netherlands corporation. At all material times, Oxbow Coal, B.V. was an indirect, wholly-owned subsidiary of Oxbow Carbon, and an affiliate corporation of OCM and OCM International. During the second quarter of 2011, Defendant Zhan became the General Manager of OCM's Tianjin, China, office.

## SUBJECT MATTER JURISDICTION

11.      This Court has subject matter jurisdiction over this action because the amount in controversy exceeds the sum of $15,000.00 exclusive of costs, interest, and attorneys' fees.

## VENUE

12.      Venue is proper in Palm Beach County pursuant to Chapter 47 of the Florida Statutes.

## PERSONAL JURISDICTION

### Personal Jurisdiction Over Oxbow Employee Defendant Martensen

13.      Defendant Martensen is subject to personal jurisdiction in Florida, pursuant to Section 48.193(1)(b), Florida Statutes, because Defendant Martensen committed tortious acts outside the state of Florida that resulted in harm to Plaintiffs Oxbow Carbon and OCM within the

- 4 -

state of Florida.  Specifically, and as discussed in detail herein, Defendant Martensen accepted illegal bribes, kick-backs, and other payments from competitors of Plaintiffs and from other third parties; participated in the illegal diversion of Plaintiff's products and services to companies in competition with Plaintiffs, and secretly shared in the payments, revenues, and profits derived by Plaintiffs' competitors from the sale of those products to third party customers; conspired with Defendants Black and Zhan and others to divert related transportation business to a known competitor of one of Plaintiffs' affiliated companies, in direct contravention of explicit instructions from Defendant Martensen's superiors, and participated in the wrongful imposition and misappropriation of illicit overcharges imposed by that competitor upon Plaintiffs' legitimate customers. Defendant Martensen further utilized Plaintiffs' assets, equipment, and facilities to promote the business of Plaintiffs' competitors; submitted and obtained tens of thousands of dollars of expense reimbursements, including for overseas school tuitions, while simultaneously and illicitly obtaining reimbursement of *those very same* expenses from Plaintiffs' competitors with whom Defendants were conspiring to injure Plaintiffs; and used his status and access to information as an employee executive of OCM and OCM International to obtain confidential and propriety information in order to promote the business interests of competitors and for his own self-enrichment at the expense of Plaintiffs.  Defendant Martensen's tortious conduct has caused Oxbow Carbon and OCM, companies headquartered in West Palm Beach, Florida, to suffer great harm within the state of Florida, including, but not limited to, substantial out of pocket losses, and even more substantial lost business opportunities, and irreparable injury to the relationships and goodwill that Plaintiffs enjoy with their legitimate customers.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower • 150 West Flagler Street • Suite 2200 • Miami, FL 33130 • 305-789-3200

14.     Defendant Martensen is also subject to personal jurisdiction in Florida, pursuant
to Section 48.193(2), Florida Statutes, because Defendant Martensen, as an executive officer of
OCM and OCM International, had and maintained regular and systematic contacts in Florida,
including, but not limited to the following activities before and during the time of the events
alleged herein:

     (a)     Defendant Martensen routinely and consistently communicated electronically and telephonically with various individuals and departments in Oxbow Carbon's and OCM's West Palm Beach, Florida, office as part of the regular course of his business operations.

     (b)     Defendant Martensen routinely and consistently communicated electronically and telephonically with various individuals within Plaintiffs' Chartering and Logistics Department, located in Oxbow Carbon's and OCM's West Palm Beach, Florida, office, which arranges for the shipment of Plaintiffs' product from California to Asia.

     (c)     Defendant Martensen regularly participated in weekly marketing conference calls hosted and led by OCM's West Palm Beach, Florida, office, during which Defendant Martensen provided an update on OCM-Asia operations.

     (d)     Defendant Martensen submitted expense reports electronically to OCM's Accounts Payable Department, located in OCM's West Palm Beach, Florida, office, which reviews and approves the expenses, and then processes reimbursement payments for those expenses.

     (e)     When Defendant Martensen relocated from California to Singapore, Defendant Martensen electronically submitted expense reports for his relocation fees (including moving charges and airfare), rent in Singapore, and his children's school tuition in Singapore to Oxbow Carbon's and OCM's West Palm Beach, Florida, office, which reviewed and approved the expenses, and then wire transferred reimbursement payments to Defendant Martensen in Singapore.

     (f)     Defendant Martensen received payroll change notices from Oxbow Carbon's and OCM's West Palm Beach, Florida, office, which maintains all payroll records for Defendant Martensen, and processes his paychecks through an outside payroll service in West Palm Beach, Florida. Oxbow Carbon's and OCM's West Palm Beach, Florida, office also determined and processed all bonus payments provided to Defendant Martensen.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Suite 2200 ▪ Miami, FL 33130 ▪ 305-789-3200

(g) Defendant Martensen has traveled to West Palm Beach, Florida, at least twice in the last two years for OCM trader meetings, most recently in February of 2011.

(h) When Defendant Martensen worked in OCM's California office, he was provided with training on the use of the companies' computer systems by Oxbow Carbon's and OCM's West Palm Beach, Florida, office.

### Personal Jurisdiction Over Oxbow Employee Defendant Black

15. Defendant Black is subject to personal jurisdiction in Florida, pursuant to Section 48.193(1)(b), Florida Statutes, because Defendant Black committed tortious acts outside the state of Florida that resulted in harm to Oxbow Carbon and OCM within the state of Florida. Specifically, and as discussed in detail herein, Defendant Black participated in the diversion of Plaintiffs' products and services to companies in competition with Plaintiffs; conspired with Defendants' Martensen and Zhan and others to divert related transportation business to a known competitor of one of Plaintiffs' affiliated companies, in direct contravention of explicit instructions from Defendant Black's superiors, and participated in the wrongful imposition and misappropriation of illicit overcharges imposed by that competitor upon Plaintiffs' legitimate customers; and utilized Plaintiffs' assets, equipment, and facilities to cover up the illegal activities of Defendants Martensen and Zhan and to promote the business of Plaintiffs' competitors. Defendant Black's tortious conduct has caused Oxbow Carbon and OCM, companies headquartered in West Palm Beach, Florida, to suffer great harm within the state of Florida, including, but not limited to, substantial out of pocket losses, and even more substantial lost business opportunities, and irreparable injury to the relationships and goodwill Plaintiffs enjoy with their legitimate customers.

16. Defendant Black is also subject to personal jurisdiction in Florida, pursuant to Section 48.193(2), Florida Statutes, because Defendant Black, as a Member and executive officer

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower • 150 West Flagler Street • Suite 2200 • Miami, FL 33130 • 305-789-3200

of Oxbow Carbon and as an executive officer of OCM, had and maintained regular and systematic contacts in Florida, including, but not limited to the following activities before and during the time of the events alleged herein:

(a)     Defendant Black routinely and consistently communicated electronically and telephonically with various individuals and departments in Oxbow Carbon's and OCM's West Palm Beach, Florida, office as part of the regular course of his business activities and corporate obligations.

(b)     Defendant Black routinely and consistently communicated electronically and telephonically with various individuals within Plaintiffs' Chartering and Logistics Department, located in Oxbow Carbon's and OCM's West Palm Beach, Florida, office, which arranges for the shipment of Plaintiffs' product from California to Asia.

(c)     Defendant Black regularly participated in weekly Monday senior management conference calls hosted and led by Oxbow Carbon's and OCM's West Palm Beach, Florida, office.

(d)     Defendant Black regularly participated in weekly marketing conference calls hosted and led by Oxbow Carbon's and OCM's West Palm Beach, Florida, office, during which Defendant Black provided an update on OCM-West Coast operations.

(e)     Defendant Black submitted his expense reports electronically to Oxbow Carbon's and OCM's Accounts Payable Department, located in Oxbow Carbon's and OCM's West Palm Beach, Florida, office, which reviews and approves the expenses, and then processes reimbursement payments for those expenses.

(f)     Defendant Black received payroll change notices from Oxbow Carbon's and OCM's West Palm Beach, Florida, office, which maintains all payroll records for Defendant Black, and processes his paychecks through an outside payroll service in West Palm Beach, Florida. Oxbow Carbon's and OCM's West Palm Beach, Florida, office also determined and processed all bonus payments provided to Defendant Black.

(g)     Defendant Black has attended OCM's Board of Directors meetings in West Palm Beach, Florida, in past years. Moreover, in the last few years, Defendant Black has traveled to Oxbow Carbon's and OCM's West Palm Beach, Florida, office approximately two to four times per year.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower • 150 West Flagler Street • Suite 2200 • Miami, FL 33130 • 305-789-3200

(h)     Defendant Black was provided with training on the use of the companies' computer systems by Oxbow Carbon's and OCM's West Palm Beach, Florida, office.

**Personal Jurisdiction Over Oxbow Employee Defendant Zhan**

17.     Defendant Zhan is subject to personal jurisdiction in Florida, pursuant to Section 48.193(1)(b), Florida Statutes, because Defendant Zhan committed tortious acts outside the state of Florida that resulted in harm to OCM within the state of Florida.   Specifically, and as discussed in detail herein, Defendant Zhan accepted illegal bribes, kick-backs, and other payments from Plaintiffs' competitors and from other third parties; participated in the illegal diversion of Plaintiffs' products and services to companies in competition with Plaintiffs, and secretly shared in the payments, revenues, and profits derived by Plaintiffs' competitors from the sale of those products to third party customers; conspired with Defendants Martensen and Black and others to divert related transportation business to a known competitor of one of Plaintiffs' affiliated companies, in direct contravention of explicit instructions from Defendant Zhan's superiors, and participated in the wrongful imposition and misappropriation of illicit overcharges imposed by that competitor upon Plaintiffs' legitimate customers; utilized Plaintiffs' assets, equipment, and facilities to promote the business of Plaintiffs' competitors; aided and abetted Defendant Martensen in obtaining tens of thousands of dollars of expense reimbursements, including for overseas school tuitions, while aware that Defendant Martensen was simultaneously and illicitly obtaining reimbursement of *those very same* expenses from Plaintiffs' competitors with whom Defendants were conspiring to injure Plaintiffs; and used his status and access to information as an employee executive of OCM International or one of its affiliated companies to obtain confidential and propriety information in order to promote the business interests of competitors and for his own self-enrichment at the expense of Plaintiffs.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower • 150 West Flagler Street • Suite 2200 • Miami, FL 33130 • 305-789-3200

Defendant Zhan's tortious conduct has caused OCM, a company headquartered in West Palm Beach, Florida, to suffer great harm within the state of Florida, including, but not limited to, substantial out of pocket losses, and even more substantial lost business opportunities, and irreparable injury to the relationships and goodwill that Plaintiffs enjoy with their legitimate customers.

18.     Defendant Zhan is also subject to personal jurisdiction in Florida, pursuant to Section 48.193(2), Florida Statutes, because Defendant Zhan, an executive employee of OCM and its affiliated companies, had and maintained regular and systematic contacts in Florida, including, but not limited to the following activities before and during the time of the events alleged herein:

(a)     Defendant Zhan routinely and consistently communicated electronically and telephonically with various individuals and departments in Oxbow Carbon's and OCM's West Palm Beach, Florida, office as part of the regular course of his business activities and corporate obligations.

(b)     Defendant Zhan routinely and consistently communicated electronically and telephonically with various individuals within OCM's Chartering and Logistics Department, located in OCM's West Palm Beach, Florida, office, which arranges for the shipment of Plaintiffs' product from California to Asia.

(c)     OCM's West Palm Beach, Florida, office determined all bonus payments provided to Defendant Zhan.

(d)     Defendant Zhan traveled to West Palm Beach, Florida, in early 2008 and 2011 for OCM trader meetings.

## FACTUAL ALLEGATIONS

## I.     The Business Of Oxbow Carbon, OCM, And OCM International

19.     Plaintiff Oxbow Carbon, the parent corporation of Plaintiffs OCM and OCM International, is one of the largest diversified solid fuel providers in the world. Each year, through its subsidiaries and affiliates, Oxbow Carbon supplies millions of metric tons of

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower • 150 West Flagler Street • Suite 2200 • Miami, FL 33130 • 305-789-3200

petroleum coke and steam coal by vessel, rail, barge and truck to customers throughout the United States and countries located throughout the world.

20.     Oxbow Carbon is the largest distributor of petroleum coke in the world, with annual shipments of nearly 11 million metric tons. Oxbow Carbon exports petroleum coke worldwide into the European, Latin American and Pacific Rim markets.

21.     Petroleum coke, or "pet coke," is a solid high carbon material that is produced as a by-product of the oil refining process. Pet coke can serve as either an energy source or carbon source.  Fuel grade pet coke, which serves as an energy source, represents about 71 percent of the total pet coke production.

22.     Oxbow Carbon also mines and supplies significant amounts of low sulfur, high BTU coal, to utility and industrial customers throughout the United States and throughout the world.  Oxbow Carbon also serves as a third-party provider of low sulfur western coal.

23.     Oxbow Carbon, through OCM and OCM International, sells significant amounts of pet coke and coal throughout Asia, shipping millions of metric tons of product to that region each year.

24.     Although there are many customers with which Plaintiffs do business in Asia, a significant amount of Plaintiffs' Asian sales between 2009 and 2011 were to three (3) companies, which will be referred to herein as: Oxbow Asian Customer One, Oxbow Asian Customer Two, and Oxbow Asian Customer Three.  The identity of each of these customers is well-known to Defendants.  During 2009-2011, Plaintiffs sold over one million metric tons of product collectively to these three entities.  Or, more accurately, as outlined herein, Plaintiffs *believed* that they had sold this much product to these three entities during that time period.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Suite 2200 ▪ Miami, FL 33130 ▪ 305-789-3200

25.     Plaintiffs' product is sold to Asian customers, in shipping terms, as Free On Board ("FOB"), Cost Plus Freight ("CFR"), or Cost Plus Insurance And Freight ("CIF").   For Plaintiffs' customers that wish to arrange their own shipping on unaffiliated overseas carriers and incur the risk of loss after the purchased product is delivered to the shipping line of the customer's choice (*i.e.*, "FOB"), Plaintiffs will deliver the purchased product to the freight forwarder of the customer's choice, for subsequent shipping to the customer's overseas location.

26.     However, Plaintiffs, though Oxbow Carbon's Logistics Group, can also arrange shipping charters through third-party overseas carriers to deliver pet coke and coal to Plaintiffs' overseas customers. Such shipments can be arranged as either CFR, in which Plaintiffs and their third-party carriers pay the freight costs to bring the purchased product to the customer's destination port, or as CIF, in which Plaintiffs also procure and pay for the insurance costs associated with the freight.

## II.     Allegations Of Misconduct

27.     In 2011, Oxbow Carbon received information alleging that Defendants Black and Martensen had been engaging in extensive theft, breaches of fiduciary duty, fraud, and self-dealing against the companies by which they were employed.

28.     The allegations were that Defendants Black and Martensen had been "stealing" from Plaintiffs and receiving compensation for Plaintiffs' product that was being fraudulently diverted and resold to third-party buyers, all in collusion with a specific employee of Oxbow Asian Customer One (hereinafter referred to as "Co-Conspirator One") whose identity is well-known to Defendants.  According to these allegations, Co-Conspirator One had become affiliated with a new company, separate from her employer (Oxbow Asian Customer One), and was using that new company to surreptitiously acquire pet coke and coal from Plaintiffs at low prices and resell it, at substantially higher margins, to third-party buyers in Asia.  According to these

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Suite 2200 ▪ Miami, FL 33130 ▪ 305-789-3200

allegations, Co-Conspirator One then would funnel a portion of the profits from those sales, in the form of illegal compensation or payments, to Defendants Black and Martensen individually.

29.     Based on this information, Plaintiffs thereafter undertook a lengthy comprehensive forensic review of thousands of Plaintiffs' documents, including the written corporate communications files (letters, memoranda, electronic corporate communications, etc.) of several of Plaintiffs' employees, including Defendants Martensen, Black, and Zhan. Plaintiffs also reviewed and compared OCM's and OCM International's sales records for transactions with their Asian customers ("Sales Summaries") with other supporting documentation regarding the shipment of those purchases ("Shipping Support Documents").   As detailed below, Plaintiffs have confirmed that Defendants have indeed engaged in extensive wrongdoing and have committed significant breaches of duty against Plaintiffs.

**III.     Plaintiffs Discover Secretive And Illicit Sales To Two Shell Companies.**

30.     A comparison of Plaintiffs' Sales Summaries and related Shipping Support Documents revealed that, in numerous instances, the entity listed as the purchaser of a cargo in the Sales Summaries (*i.e.*, the party invoiced by Plaintiffs) did not correspond or match with the purchaser named on the Shipping Support Documents.

31.     By examining those discrepancies, Plaintiffs first discovered the existence of two shell companies, the identities of which are well-known to Defendants (hereinafter "Shell Company One" and "Shell Company Two") that, unbeknownst to Plaintiffs, had been surreptitiously purchasing a large amount of pet coke and coal from Plaintiffs in Asia.  Plaintiffs' Sales Summaries indicated, falsely, that the buyers were long-time customers of Plaintiffs. However, based on the Shipping Support Documents, Plaintiffs discovered that either Shell Company One or Shell Company Two was the actual buyer of these cargoes.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower • 150 West Flagler Street • Suite 2200 • Miami, FL 33130 • 305-789-3200

32.     In fact, no legitimate corporate relationship exists between Shell Company One and Oxbow Asian Customer One, Oxbow Asian Customer Two or Oxbow Asian Customer Three. Similarly, no legitimate corporate relationship exists between Shell Company Two and Oxbow Asian Customer One, Oxbow Asian Customer Two or Oxbow Asian Customer Three. In fact, Shell Company One and Shell Company Two do not appear to be legitimate businesses at all and are, instead, being used to funnel and divert monies from both Plaintiffs and Plaintiffs' long-time customers in Asia.

### IV.    Shell Company One And Shell Company Two Are Part Of A Sophisticated And Illicit Scheme.

33.     Shell Company One is, upon information and belief, a privately held company in Asia. Shell Company One claims a registered address in a major Asian city, but all available information indicates that it has no operational business presence at such location.  In fact, it appears that such address is occupied by completely separate businesses unrelated to Shell Company One.  Although Shell Company One has a very similar name to a legitimate Asian business, Shell Company One has no discernible business operations in Asia.

34.     Shell Company Two is, upon information and belief, a privately held company in Asia. Shell Company Two claims a registered address in a major Asian city, but all available information indicates that Shell Company Two has no operational business presence at such location.

35.     There is a direct relationship between Shell Company One and Shell Company Two.  Both entities are controlled and owned by an overlapping set of individuals and relatives.

36.     Further evidencing the close, indeed overlapping, relationship between Shell Company One and Shell Company Two, Plaintiffs discovered a Charter Party Agreement between Shell Company Two and American Frontier Marine, Inc., f/k/a Frontier International

- 14 -

Shipping Corporation ("Frontier") in Defendant Zhan's electronic corporate files, which had been signed and stamped with Shell Company One's legal seal. This apparent misstep of using a Shell Company One seal on a Shell Company Two contract compellingly indicates that the same individuals were creating contracts for Shell Company One and for Shell Company Two.

37.     Shell Company One and Shell Company Two are referred to herein collectively as the "Shell Companies."

## V.     Defendants' Illicit Relationship With The Shell Companies.

38.     In or around mid-2009, Shell Company One and Shell Company Two began secretly buying pet coke and coal from OCM and OCM International with the direct involvement of Defendants Martensen, Black, Zhan, and Co-Conspirator One.

39.     In most, if not all, of the Defendants' communications regarding sales by OCM and OCM International to the Shell Companies, Co-Conspirator One was copied. These communications include the details of cargo shipments, despite the fact that Co-Conspirator One's employer, Oxbow Asian Customer One, was not involved in the sale.

40.     The written communications between Defendants and Co-Conspirator One regarding the Shell Companies frequently involved an individual identified herein as Co-Conspirator Two. In addition to her role as an owner of Shell Company One, Co-Conspirator Two is also an employee of an actual affiliate of Oxbow Asian Customer Two. However, Co-Conspirator Two is referred to in the relevant written communications as the "Director/General Manager" of Shell Company One.

41.     Defendants Martensen, Black, and Zhan knowingly assisted Co-Conspirator One and Co-Conspirator Two and the Shell Companies to surreptitiously divert large quantities of pet coke and coal from Plaintiffs at prices typically reserved for Plaintiffs' preferred customers. And,

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower • 150 West Flagler Street • Suite 2200 • Miami, FL 33130 • 305-789-3200

in some instances, these customers even received prices that were lower than those of Plaintiffs' preferred and long-time customers.

42.     After receiving the pet coke or coal from Plaintiffs, the Shell Companies then would resell that pet coke or coal at unusually high profit margins – sometimes as high as *12 times* higher than that which Plaintiffs charge their customers. The Shell Companies, with the active assistance of Defendants Martensen, Black, and Zhan, eventually became one of OCM's and OCM International's largest "buyers" of product in Asia.

43.     Between 2009 and 2012, Defendants Martensen, Black, and Zhan engaged in a pattern and practice of conspiring with, and otherwise actively assisting, the Shell Companies to surreptitiously purchase, divert, and then re-sell at higher margins substantial amounts of pet coke and coal that was purchased from Plaintiffs. Defendants Martensen, Black, and Zhan knew that such higher margin sales were corporate opportunities of Plaintiffs, and that the revenues and profits derived from those sales should have inured to the benefit of Plaintiffs.   Had Defendants Martensen, Black, and Zhan been acting in good faith and true to their fiduciary duties to OCM, those sales and those profit margins would have accrued to the benefit of Plaintiffs.

44.     Defendants Martensen, Black, and Zhan facilitated those surreptitious purchase and sale transactions for the benefit of themselves and the Shell Companies, and to the detriment of the Plaintiffs in which they held executive positions. In exchange for this padding and diversion, as further alleged herein, at least Defendants Martensen and Zhan received remuneration from the Shell Companies in the form of illegal bribes and illicit compensation.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Suite 2200 ▪ Miami, FL 33130 ▪ 305-789-3200

45.     Plaintiffs have suffered substantial out of pocket losses and even more substantial lost corporate opportunities that were usurped because of the actions and/or willful inactions of Defendants Martensen, Black, and Zhan.

**VI.     Defendants Martensen, Black, and Zhan Attempt To Conceal The Nature And Activities Of The Shell Companies.**

46.     Despite their knowledge of the true nature of the Shell Companies, Defendants Martensen, Black, and Zhan repeatedly and falsely represented to Plaintiffs – both explicitly and implicitly – that Shell Company One and Shell Company Two were affiliates of Plaintiffs' legitimate customers.

47.     For example, in June of 2009, OCM leadership noticed that a substantial payment was made to OCM from Shell Company One for the purchase of product. However, when questioned by OCM leadership about the unexpected and unknown purchaser's name, Defendant Zhan represented that Shell Company One was a subsidiary of Oxbow Asian Customer Two, which representation Defendant Zhan knew to be false.

48.     Similarly, in an exchange of electronic corporate communications, dated May 6, 2010, Defendant Zhan again represented to OCM's Treasury Manager and Director of Logistics and Planning that Shell Company One was a subsidiary of Oxbow Asian Customer Two, which representation, again, Zhan knew was false. Defendant Martensen was included as a "cc:" on that electronic communication. Despite Martensen's knowledge of the falsity of the representations in that electronic communication, and in furtherance of Defendants' illicit scheme, Martensen never alerted Plaintiffs to the existence of such falsity.

49.     Defendant Zhan again knowingly and falsely represented that Shell Company One was a subsidiary of Oxbow Asian Customer Two in a May 25, 2011 electronic corporate communication to Oxbow Carbon's Director of Logistics and Planning.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower • 150 West Flagler Street • Suite 2200 • Miami, FL 33130 • 305-789-3200

50.     Defendant Zhan also took other steps to help disguise and conceal the illegitimate nature of the Shell Companies.  For example, electronic corporate communications  from 2009 and 2011 reveal that Defendant Zhan requested that OCM employees not mail any invoices to Shell Company One or Shell Company Two, but rather instructed that any invoices to those two entities be sent to Defendant Zhan so that he could supposedly "hand deliver" the invoices to those companies.

51.     Defendants Black and Martensen were also involved in and aware of these efforts to disguise these illicit dealings with Shell Company One or Shell Company Two. Defendants Black and Martensen were frequently included on electronic corporate communications, including, for example, one communication, dated December 27, 2011, in which Defendant Zhan falsely represented to other employees of Plaintiffs that Shell Company One was a subsidiary of Oxbow Asian Customer Two, which representation Defendants Black and Martensen knew to be false. Despite Martensen's and Black's knowledge of the falsity of the representations in that electronic communication, and in furtherance of Defendants' scheme, neither Martensen nor Black ever alerted Plaintiffs to the existence of such falsity.

## VII.    Defendants Martensen, Black, and Zhan Help To Illegally Funnel Freight Discounts To The Shell Companies.

52.     As an additional component to the Shell Companies' illicit activities, Defendants Martensen, Black, and Zhan misappropriated monies from Plaintiffs' customers by crediting Shell Company One and Shell Company Two with freight discounts that belonged to Plaintiffs' legitimate customers.

53.     To effectuate this part of the scheme, Defendants Martensen, Black, and Zhan encouraged Plaintiffs' Asian customers to buy pet coke and coal products "FOB Long Beach" and utilize Frontier, a non-affiliated charter company, despite the fact that it was Defendants'

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON. P.A.
Museum Tower • 150 West Flagler Street • Suite 2200 • Miami, FL 33130 • 305-789-3200

fiduciary duty to Plaintiffs to encourage those customers to utilize Oxbow Carbon's Logistics Group to facilitate those shipments whenever possible.

54.     The Defendants' encouragement of Plaintiffs' customers to purchase pet coke or coal "FOB Long Beach" allowed Frontier and Mathisen to provide the freight forwarding (shipping) services, and Defendants Martensen, Black, and Zhan actively steered such business to Frontier and Mathisen.  Defendants, who each had a close personal and business relationship with Mathisen, actively encouraged the use of Frontier by Plaintiffs' customers despite the fact that, as early as 2004, Defendants had been specifically instructed by their superiors to not transact any business with Frontier or Mathisen.

55.     Defendants' written corporate communications also revealed that Co-Conspirator One also has a close and direct business relationship with Mathisen.

56.     With frequent, large quantities of cargo being shipped by Frontier and Mathisen, Defendants and their co-conspirators were able to use freight charges to improperly funnel money to the Shell Companies from Plaintiffs' other customers by wrongfully changing the invoices to divert "credits" from legitimate customers to the accounts of Shell Company One and Shell Company Two.

57.     The mechanics of this part of the scheme begin with Frontier charging elevated or padded freight rates to Plaintiffs' customers such as Oxbow Asian Customer One, Oxbow Asian Customer Two, and Oxbow Asian Customer Three. These rates, in some instances, far exceeded the freight rates that Oxbow Carbon's Logistics Group could and would have obtained for its customers for that same freight.  Those "overpayments" were then wrongfully credited to Shell Company One and Shell Company Two, at the expense of Oxbow Asian Customer One, Oxbow Asian Customer Two, and Oxbow Asian Customer Three.

- 19 -

58.     Beginning in June 2009, and continuing throughout 2010 and 2011, Shell Company One alone, with the active knowledge, assistance, and participation of Defendants, misappropriated at least $1.2 million in freight payments from Plaintiffs' legitimate customers.

59.     Defendant Zhan was directly involved in coordinating these improper discounts on behalf of Shell Company One by acting as an intermediary between Mathisen (Frontier) and Shell Company One. In many instances, Defendant Zhan told Mathisen in writing exactly how much to credit Shell Company One.

60.     Defendants and their co-conspirators took steps to conceal this diversionary misappropriation of funds.  These discounts, as itemized on Frontier's invoices, were initially disguised as "freight reductions" or "overpayments" on other vessels.  However, more recently, Defendants and their co-conspirators referred to these adjustments on various invoices as "discounts."  Indeed, in a May 4, 2011, electronic corporate communication, Defendant Zhan stated to Frontier: "[A]s usual, no need to show the details of the deductions, just show discount of the total amount…"

61.     In addition to his role in covering up the theft of these funds to the benefit of Shell Company One, Defendant Zhan, while at his OCM office and using his OCM electronic mail account, also facilitated the creation of fake and fraudulent invoices on behalf of Shell Company One while he should have been acting as an employee on behalf of OCM.

62.     For example, in one electronic corporate communication, dated December 21, 2010, an officer of Frontier communicated to Defendant Zhan the need for Defendant Zhan to manufacture a Shell Company One invoice that Frontier could then give to Plaintiffs: "I do not have a copy of [Shell Company One] letterhead nor bank style, etc. to prepare a proper invoice to give to Bruce [Taverner from Oxbow Carbon]. Attached therefore is just a general outline of an

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower • 150 West Flagler Street • Suite 2200 • Miami, FL 33130 • 305-789-3200

invoice. Could you please put it on [Shell Company One] letterhead and maybe fill in a bank style if you think necessary. Once these funds have been remitted to [Shell Company One] then they should be re-sent to American Frontier."

### VIII.   Defendant Martensen, With The Knowledge And Assistance Of Defendant Zhan, Received Kickbacks From The Shell Companies.

63.     Plaintiffs have identified at least two direct monetary kickbacks/payments to Defendant Martensen as a result of his secret business relationship with the Shell Companies.

64.     Specifically, an attachment to an electronic corporate communication, dated August 23, 2010, between Co-Conspirator One, Co-Conspirator Two, and Defendant Zhan on the Oxbow electronic mail server and in Defendant Zhan's OCM electronic mail account refers to a cash payment due and paid personally to Defendant Martensen from Shell Company One.

65.     That attachment was an Excel workbook, principally in an Asian language, with the English word "Kirby" and the name of Shell Company One next to two cells containing the numbers 30,000 and 20,000.  When the Excel workbook was translated into English, those two rows read as follows: The first row begins with the date 5/7/2010, and includes the name of Shell Company One, followed by the number 30,000.00, and then the words "Cash" and "Give it to Kirby."  The second row, which begins with the date 5/10/2010, also says the name of Shell Company One, followed by the number 20,000.00, and then the words "Cash" and "Give it to Kirby."

66.     The remainder of that Excel workbook reflected other various debts of Shell Company One.

67.     Defendant Martensen's Oxbow expense reports show that from May 11, 2010, to May 15, 2010, he visited certain cities in Asia, which is consistent with Defendant Martensen

- 21 -

receiving a cash payment from Shell Company One just days after the payment dates listed on the Excel workbook.

68.     Defendant Martensen also received a secretive monetary payment from Shell Company One for payment of school tuition for his son.  On December 26, 2011, Defendant Zhan sent an electronic corporate communication to Co-Conspirator Two (the Director/General Manager and 50% owner of Shell Company One), with a copy to Co-Conspirator One, which stated: "Please arrange wire transfer per below message."  The "below message" was a payment request for tuition for the 2012 school year for Defendant Martensen's son. This tuition payment was 14,345.10 in Singapore Dollars (SGD), which was equivalent to approximately $11,400 United States Dollars (USD).

69.     No legitimate reason or explanation exists why Shell Company One, with which Defendant Martensen had no legitimate employment relationship, would pay for the school tuition of Defendant Martensen's son.   Such payment constituted an illegal payment to Defendant Martensen as compensation for his participation in the Shell Companies' illicit activities.

70.     Even worse, on January 16, 2012 – just a few weeks after he had improperly received these tuition monies from Shell Company One -- Defendant Martensen requested reimbursement from his then employer, OCM International, for the very same 14,236.78 SGD in school tuition for which he (with Defendant Zhan's assistance) had received payment from Shell Company One. This request and payment represents outright theft from OCM International.

71.     Defendant Martensen's tuition reimbursement request was accompanied by hand-written wire transfer receipts that purport to indicate that Defendant Martensen's wife submitted their son's tuition payment directly to the school.  However, the December 26, 2011 electronic

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower • 150 West Flagler Street • Suite 2200 • Miami, FL 33130 • 305-789-3200

corporate communication from Defendant Zhan to Co-Conspirator Two and Co-Conspirator One indicate that the tuition actually was paid directly to the school by Shell Company One.

72.     Unaware of the fact that Defendant Martensen had received payment from Shell Company One for the same tuition, and having been misled into believing that Martensen had personally paid the tuition out of his own personal funds, OCM International approved Martensen's requested "reimbursement." OCM thereafter processed the "reimbursement" payment in West Palm Beach, Florida, and payment was made to Defendant Martensen, via a wire transfer from an Oxbow Carbon account, on or about January 2012.

73.     Plaintiffs believe that discovery will reveal other evidence of bribes and kickbacks being paid to Defendants for their role in diverting sales of product to Shell Company One and Shell Company Two. Plaintiffs do not believe it is a coincidence that, as early as November of 2009, Defendant Martensen notified Defendant Black in an electronic communication that the United States Internal Revenue Service was cracking down on United States citizens who were utilizing secret foreign bank accounts to hide income from the United States taxing authorities.

## IX.   Defendant Black Facilitated And Concealed The Shell Companies' Illicit Scheme.

74.     Defendant Black, who was the supervisor of Defendants Martensen and Zhan, was aware of the Shell Companies' scheme, and helped facilitate his subordinates' role in that scheme.

75.     Defendant Black also took affirmative steps to conceal the Shell Companies' scheme. In or about January 2012, Defendant Black's superiors at Oxbow Carbon asked Defendant Black to provide them with a list of OCM's and OCM International's major customers in Asia. After he repeatedly delayed sending the requested customer list, on or about

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower • 150 West Flagler Street • Suite 2200 • Miami, FL 33130 • 305-789-3200

March 5, 2012, Defendant Black eventually submitted, through an electronic communication, a list of those major customers to his superiors at Oxbow Carbon. The list that Defendant Black provided excluded any reference to Shell Company One or Shell Company Two. Instead, it listed only those entities referred to herein as Oxbow Asian Customer One, Oxbow Asian Customer Two, and Oxbow Asian Customer Three, as well as a fourth entity.

76. Defendant Black's omission of Shell Company One and Shell Company Two from the Asian customer list was purposeful and part of an attempt to conceal the business being diverted to the Shell Companies.

77. From late 2009 through early 2012, Defendant Black was fully aware that Shell Company One and Shell Company Two were major customers that were being disguised as affiliates of Plaintiffs' legitimate customers. For example, Defendant Black was the recipient of numerous electronic corporate communications that listed Shell Company One on OCM and OCM International vessel schedules. Defendant Black was also included as a "cc:" on numerous electronic corporate communications referencing purchases by Shell Company One and shipments to Shell Company One. Defendant Black also submitted an expense report to OCM, requesting reimbursement for "[c]ocktails" with representatives from Shell Company One on January 24, 2010.

## FIRST CLAIM FOR RELIEF

### (BREACH OF FIDUCIARY DUTY)

#### (AGAINST DEFENDANT MARTENSEN, DEFENDANT BLACK, AND DEFENDANT ZHAN)

78. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 77 of this Complaint as if set forth in full herein.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Suite 2200 ▪ Miami, FL 33130 ▪ 305-789-3200

79.     Defendants, as executive employees and officers of Plaintiffs, held positions of confidence and trust with Plaintiffs specifically given to them by Plaintiffs and as such, Defendants were obligated to act in good faith and with due regard to the interests of Plaintiffs.

80.     By depriving Plaintiffs of corporate opportunities of legitimate interest to Plaintiffs, by stealing from Plaintiffs, and by otherwise engaging in the conduct alleged herein, Defendants breached their respective fiduciary duties to Plaintiffs.

81.     As a result of Defendants' conduct, Plaintiffs have suffered substantial damages, in the millions of dollars, the exact amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (BREACH OF DUTY OF LOYALTY AND CARE)

#### (AGAINST DEFENDANT MARTENSEN, DEFENDANT BLACK, AND DEFENDANT ZHAN)

82.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 77 of this Complaint as if set forth in full herein.

83.     Defendants, as executive employees and officers of Plaintiffs, held positions of confidence and trust with Plaintiffs and as such, Defendants were obligated to act in good faith and with due regard to the interests of Plaintiffs.

84.     Defendants owed to Plaintiffs the duty of loyalty and care and specifically were obligated to refrain from engaging in reckless conduct, intentional misconduct, conduct which is known to be in violation of the law and conduct which is otherwise detrimental to Plaintiffs.

85.     By virtue of Defendants' conduct as alleged herein, Defendants' breached their duties of loyalty and care to Plaintiffs because they engaged in intentional misconduct, reckless conduct, conduct which they knew or should have known was in violation of the law and conduct which they knew or should have known was detrimental to Plaintiffs.

86.     Plaintiffs have suffered substantial damages, in the millions of dollars, by Defendants' breach of their duties of loyalty and care, the exact amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### (USURPATION OF CORPORATE OPPORTUNITY)

### (AGAINST DEFENDANT MARTENSEN, DEFENDANT BLACK, AND DEFENDANT ZHAN)

87.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 77 of this Complaint as if set forth in full herein.

88.     Plaintiffs are in the business of selling solid fuels including pet coke and coal, and Defendants, as officers of the Plaintiffs were, at all relevant times, keenly aware of Plaintiffs' business interests in general and, specifically, Plaintiffs' business interests in Asia.

89.     As alleged herein, Defendants engaged in a scheme designed to deprive Plaintiffs of business opportunities with entities which either were Plaintiffs' existing customers or which were naturally potential customers of Plaintiffs. Defendants' scheme was designed to benefit themselves and the Shell Companies at the expense of Plaintiffs.

90.     Defendants' scheme involved the present business activities of Plaintiffs.

91.     Defendants' scheme involved business opportunities in which Plaintiffs had an interest for valid and significant corporate purposes.

92.     Defendants breached their fiduciary duties and duties of loyalty to Plaintiffs by depriving Plaintiffs of such business opportunities and by otherwise usurping such business opportunities for their personal benefit and for the benefit of the Shell Companies.

93.     As a result of Defendants' conduct, Plaintiffs have suffered substantial damages, in the millions of dollars, the exact amount to be proven at trial.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Suite 2200 ▪ Miami, FL 33130 ▪ 305-789-3200

## FOURTH CLAIM FOR RELIEF

### (VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, SECTION 501.204 OF THE FLORIDA STATUTES)

### (AGAINST DEFENDANT MARTENSEN, DEFENDANT BLACK, AND DEFENDANT ZHAN)

94.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 77 of this Complaint as if set forth in full herein.

95.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") protects "legitimate business enterprises" such as those of the Plaintiffs, and Section 501.204 of the Florida Statutes, prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

96.     As alleged herein, Defendants have engaged in materially unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in conducting trade and commerce.

97.     Such methods, acts, and practices adversely affected Plaintiffs in violation of Section 501.204 of the Florida Statutes.

98.     Section 501.211(2) of the Florida Statutes provides, in relevant part, that "anyone aggrieved by a violation of this part may bring an action to obtain declaratory judgment ... [and] may recover actual damages, plus attorney's fees and court costs."

99.     Plaintiffs reasonably and justifiably relied on Defendants' deceptive, misleading, or false representations regarding the legitimacy, status, and nature of the customers with whom Defendants, on behalf of Plaintiffs, engaged in business to the detriment of Plaintiffs.

100.    Defendants' violation of FDUTPA has caused Plaintiffs to suffer injury including, *inter alia*, the loss of corporate opportunities and the loss of profits.  As a result of Defendants'

- 27 -

violation of FDUTPA, Plaintiffs have suffered substantial damages, in the millions of dollars, the exact amount to be proven at trial.

101.   Defendants willfully and knowingly engaged in the conduct alleged herein. Plaintiffs are entitled to damages, including injunctive relief, declaratory relief, attorneys' fees, and court costs pursuant to Section 501.204 of the Florida Statutes.

## FIFTH CLAIM FOR RELIEF

### (UNJUST ENRICHMENT)

#### (AGAINST DEFENDANT MARTENSEN AND DEFENDANT ZHAN)

102.   Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 77 of this Complaint as if set forth in full herein.

103.   By virtue of their involvement in the schemes as alleged herein, Defendant Martensen and Defendant Zhan obtained benefits in the form of illicit compensation from the Shell Companies, reimbursement of expenses already paid by or for Defendant Martensen and Defendant Zhan, and other forms of improper remuneration.

104.   Defendant Martensen and Defendant Zhan have accepted, appreciated, and retained such benefits and have done so under circumstances that would render it inequitable for Defendant Martensen and Defendant Zhan to retain such benefits.

105.   As a result of Defendant Martensen's and Defendant Zhan's acceptance of and retention of such benefits, Plaintiffs have suffered substantial damages, the exact amount to be proven at trial.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Suite 2200 ▪ Miami, FL 33130 ▪ 305-789-3200

## SIXTH CLAIM FOR RELIEF

### (CONVERSION)

### (AGAINST DEFENDANT MARTENSEN)

106.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 77 of this Complaint as if set forth in full herein.

107.    By requesting and obtaining from Plaintiff OCM International the sum of $14,345.10 (SGD) for tuition for his son after having received the same sum as illicit compensation from Shell Company One, Defendant Martensen wrongfully asserted dominion over OCM International's funds in a manner inconsistent with OCM International's ownership interest in such funds.

108.    Additionally, by obtaining the illicit compensation identified in paragraphs 64 through 67, Defendant Martensen obtained funds from Shell Company One that were otherwise funds which belonged to Plaintiff OCM International.  Defendant Martensen wrongfully asserted dominion over such funds in a manner inconsistent with OCM International's ownership interest in such funds.

109.    Defendant Martensen has failed to return the funds which rightfully belong to OCM International, despite an unequivocal legal obligation to do so.

110.    As a result of Defendant Martensen's conduct, OCM International has been damaged.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower • 150 West Flagler Street • Suite 2200 • Miami, FL 33130 • 305-789-3200

## SEVENTH CLAIM FOR RELIEF

### (CONVERSION)

### (AGAINST DEFENDANT MARTENSEN, DEFENDANT BLACK, AND DEFENDANT ZHAN)

111.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 77 of this Complaint as if set forth in full herein.

112.    By engaging in the illicit schemes alleged herein, Defendants converted to their own use Plaintiffs' property, namely the shipments of pet coke, coal and other products which Defendants, acting in concert with the Shell Companies, sold to shell entities for the purpose of divesting Plaintiffs of title to such property in order to sell such products, for their own personal benefit, to bona fide purchasers, including Plaintiffs' legitimate customers.

113.    In executing their schemes, Defendants wrongfully asserted dominion over Plaintiffs' property in a manner that was inconsistent with Plaintiffs' ownership interests in such property.

114.    Defendants have failed and refused to return to Plaintiffs such property.

115.    As a result of Defendants' conduct, Plaintiffs have suffered substantial damages, in the millions of dollars, the exact amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

### (CONSTRUCTIVE TRUST)

### (AGAINST DEFENDANT MARTENSEN, DEFENDANT BLACK, AND DEFENDANT ZHAN)

116.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 77 of this Complaint as if set forth in full herein.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower • 150 West Flagler Street • Suite 2200 • Miami, FL 33130 • 305-789-3200

117.    As a result of their roles as officers of Plaintiffs, Defendants enjoyed confidential relationships with Plaintiffs, and they used those relationships to perpetrate the illegal schemes, breaches of fiduciary duty, and breaches of duties of loyalty and care, as alleged herein.

118.    Through their wrongful actions, Defendants acquired advantages to which they were not entitled and which they should not be permitted, in equity and good conscience, to retain, to wit, the money they have improperly obtained at Plaintiffs' expense. Indeed, by their acts, Defendants have misappropriated, stolen, converted, and otherwise obtained funds which properly belong to Plaintiffs. If the Defendants are permitted to retain such funds, they will be unjustly enriched.

**WHEREFORE**, Plaintiffs pray for judgment in their favor as follows:

(a)    Injunctive relief to prohibit further wrongdoing by Defendants;

(b)    Damages for all injuries suffered as a result of Defendants' unlawful and improper conduct;

(c)    Declaratory relief, as appropriate under FDUTPA § 501.211;

(d)    Attorney's fees, as appropriate under FDUTPA § 501.211;

(e)    Court costs;

(f)    Pre-judgment interest; and

(g)    Such other and further legal and equitable relief as may be just and proper, including, but not limited to, the imposition of a constructive trust over all funds and other property of Plaintiffs that has been wrongfully misappropriated by Defendants.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Suite 2200 ▪ Miami, FL 33130 ▪ 305-789-3200

(h)     Pursuant to Section 768.72 of the Florida Statutes, Plaintiffs intend to

amend this Complaint to assert a claim for punitive damages when the

record evidence so permits.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury in this action for all issues so triable.

Dated: March 22, 2012              Respectfully submitted,

By:

Jay B. Shapiro (776361)
jshapiro@stearnsweaver.com
Eric Roth (864935)
eroth@stearnsweaver.com
Gerald E. Greenberg (440094)
ggreenberg@stearnsweaver.com
Abigail G. Corbett (31332)
acorbett@stearnsweaver.com
Geri Fischman Satin (55823)
gsatin@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
150 West Flagler Street, Suite 2200
Miami, FL  33130
(305) 789-3200

*Attorneys for Plaintiffs*

# EXHIBIT B

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 2012-CA-005386

OXBOW CARBON, LLC, OXBOW
CARBON & MINERALS, LLC, and OXBOW
CARBON & MINERALS,
INTERNATIONAL GmbH,

                 Plaintiffs,

VS.

KIRBY MARTENSEN, LAWRENCE
BLACK and ZHAN WENMING a/k/a
CHARLIE ZHAN,

                 Defendants.

_____/

### NOTICE OF SERVICE DEFENDANT MARTENSEN'S UNVERIFIED AMENDED ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES 1, 3 AND 5

PLEASE TAKE NOTICE that Defendant Kirby Martensen hereby serves his Amended

Answers to Plaintiffs' First Set of Interrogatories 1, 3 and 5, pursuant to Fla. R. Civ. P. 1.340.

Respectfully submitted, this / 7th day of December, 2012.

*Rachel R. Krause*

JEROME R. SILVERBERG
*Florida Bar No.* 355127
RACHEL R. KRAUSE
*Florida Bar No. 582522*

*Counsel for Defendant Kirby Martensen*

**LEWIS, BRISBOIS, BISGAARD & SMITH LLP**
200 SW 1st Ave, Suite 910
Fort Lauderdale, Florida 33301
Direct: 954-828-0350
Main: 954-728-1280
FAX: 954-728-1282
jsilverberg@lbbslaw.com
rkrause@lbbslaw.com

4845-3440-7698.1

## INTERROGATORIES

**INTERROGATORY NO. 1:** Please state all facts supporting your Second Affirmative Defense.

**AMENDED ANSWER:** Discovery is on-going and Defendant Martensen expressly reserves the right to supplement this response. However, based on the facts known to Defendant Martensen at the time of this response, Defendant Martensen states that the following facts support his Second Affirmative Defense:

On information and belief, OCM and its affiliated companies, have a stated policy and procedure to monitor the electronic communications and activities of employees using their OCM computers and servers. Thus, although Defendant Martensen expressly denies that his electronic communications were part of any scheme alleged by Plaintiffs' Complaint, to the extent the communications were made using OCM International's corporate communication structure and the corporate email address issued to Defendant Martensen, Plaintiffs had notice and knowledge of the actions and consented to them.

**INTERROGATORY NO. 3:** Please state all facts supporting your Third Affirmative Defense.

**AMENDED ANSWER:** Discovery is on-going and Defendant Martensen expressly reserves the right to supplement this response. However, based on the facts known to Defendant Martensen at the time of this response, Defendant Martensen states that the following facts support his Third Affirmative Defense:

On information and belief, Oxbow Carbon & Minerals International GmbH (OCM International), Defendant Martensen's employer at the time of the events alleged in Plaintiffs' complaint, enabled Oxbow Carbon & Minerals, LLC (OCM) to evade U.S. tax liability on profits in excess of $200 million per year derived from OCM's sale of petroleum coke into the Asian market. The purpose of Defendant Martensen's transfer to Asia, from which all of Plaintiffs' equitable claims derive, was to further this tax avoidance scheme. When Defendant Martensen objected to and complained about the procedures involved in obtaining approval from OCM International, a Bahamian company, for the sale and transfer of pet coke from the U.S. to Asia, he was wrongfully terminated by OCM International in retaliation for his objections and to avoid the payment of a bonus in excess of $1 million earned by Defendant Martensen based on profits he generated for OCM, personally injuring Defendant Martensen. Further, some or all of the facts underlying Plaintiffs' complaint, although expressly denied by Defendant Martensen, were obtained through false imprisonment and other tortious actions of OCM.

**INTERROGATORY NO. 5:** Please state all facts supporting your Fourth Affirmative Defense.

**AMENDED ANSWER:**  Discovery is on-going and Defendant Martensen expressly reserves the right to supplement this response.  However, based on the facts known to Defendant Martensen at the time of this response, Defendant Martensen states that the following facts support his Fourth Affirmative Defense:

The payments specifically referenced in Paragraph 64 through 67 were made by an entity completely unrelated to OCM.  Although Plaintiffs claim that such funds "belonged" to Plaintiff OCM International, there is no allegation that OCM ever had or could have had ownership or other possessory rights in the funds.  Further, even if the payments were made as a "kickback," which Defendant Martensen expressly denies, there is no factual or legal basis for OCM International to assert that it had possession or an immediate right to possession of the funds allegedly paid to Defendant Martensen.

The payment referenced in Paragraph 68 through 70, a reimbursement to Defendant Martensen for his child's preschool tuition, was made pursuant to an agreement between Defendant Martensen and OCM International, in partial consideration for Defendant Martensen's move to Singapore, in which OCM International agreed to reimburse Martensen for substantially all expenses incurred by his family while living in Singapore, including tuition for his children to attend preschool.  Although Martensen concedes having borrowed the money from a friend in order to pay the tuition, he was obligated to and did repay the loan.  Because Defendant Martensen was legally obligated to pay the tuition and the expense was incurred by Defendant Martensen, OCM International was contractually obligated to reimburse him.

Respectfully submitted, this 17ᵗʰ day of December, 2012.

JEROME R. SILVERBERG
*Florida Bar No. 355127*
RACHEL R. KRAUSE
*Florida Bar No. 582522*

**LEWIS, BRISBOIS, BISGAARD & SMITH LLP**
200 SW 1st Ave, Suite 910
Fort Lauderdale, Florida 33301
Direct: 954-828-0350
Main: 954-728-1280
FAX: 954-728-1282
jsilverberg@lbbslaw.com
rkrause@lbbslaw.com

*Counsel for Defendant Kirby Martensen*

4845-3440-7698.1                    4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to

**Jay B. Shapiro, Esq.**, Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.,

jshapiro@stearnsweaver.com, acorbett@stearnsweaver.com, eroth@stearnsweaver.com,

mrt@stearnsweaver.com, mbittner@stearnsweaver.com, by e-mail, and to **Lawrence Black**, 718

Francis Drive, Lafayette, California 94549, by U.S. Mail.

This /7 day of December, 2012.

*Rachel R. Krause*

JEROME R. SILVERBERG
*Florida Bar No. 355127*
RACHEL R. KRAUSE
*Florida Bar No. 582522*

*Counsel for Defendant Kirby Martensen*

**LEWIS, BRISBOIS, BISGAARD & SMITH LLP**
200 SW 1st Ave, Suite 910
Fort Lauderdale, Florida 33301
Direct: 954-828-0350
Main: 954-728-1280
FAX: 954-728-1282
jsilverberg@lbbslaw.com
rkrause@lbbslaw.com